1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   OSCEOLA BLACKWOOD IVORY                    No. 1:17-cv-00394-DAD-BAM
     GAMING GROUP, LLC,
12
                 Plaintiff,
13                                              ORDER GRANTING DEFENDANTS'
          v.                                    MOTION TO DISMISS
14
     PICAYUNE RANCHERIA OF                      (Doc. No. 8)
15   CHUKCHANSI INDIANS, et al.,

16               Defendants.

17

18          This matter came before the court on June 20, 2017, for hearing of defendants' motion to

19   dismiss pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction.

20   (Doc. No. 8.)  Attorney Kimberly Klinsport appeared telephonically on behalf of plaintiff Osceola

21   Blackwood Ivory Gaming Group, LLC.  Attorney Michael Robinson appeared telephonically on

22   behalf of defendants Picayune Rancheria of Chukchansi Indians and Chukchansi Economic

23   Development Authority.   For the reasons stated below, defendants' motion to dismiss will be

24   granted.

25                              **FACTUAL BACKGROUND**

26          On March 16, 2017, plaintiff Osceola Blackwood Ivory Gaming Group, LLC ("OBIG"),

27   commenced this action against defendants Picayune Rancheria of Chukchansi Indians ("Chukansi

28   Tribe") and Chukchansi Economic Development Authority ("CEDA").  (Doc. No. 1.)  Plaintiff

                                              1

1  alleges the following claims: (i) breach of contract; (ii) breach of the covenant of good faith and

2  fair dealing; (iii) breach of oral contract; (iv) breach of implied contract; (v) fraud; (vi) violation

3  of the California Business and Professions Code § 17200, et seq.; (vii) intentional interference

4  with prospective economic advantage; and (viii) negligent interference with prospective

5  economic advantage.  (*Id.*)  Plaintiff seeks an award of compensatory damages, restitutionary

6  damages, punitive damages, and attorneys' fees and costs.  (*Id.* at 27.)  In the complaint, plaintiff

7  alleges the following.

8       Plaintiff OBIG is a Florida-based corporation that provides management and consulting

9  services for Native American hospitality and gaming projects.  (*Id.* at 2, ¶ 1.)  Defendant

10  Chukchansi Tribe is a federally recognized Native American tribe located in California, and

11  defendant CEDA is a wholly-owned unincorporated arm of the Chukchansi Tribe that operates

12  the tribe's gaming facility, the Chukchansi Gold Resort & Casino ("Casino").  (*Id.* at 5, ¶¶ 10–

13  11.)

14       In October 2014, the Casino closed.  (*Id.* at 11, ¶ 28.)  Defendants subsequently began

15  working to reopen the facility.  (*Id.* at 6, ¶¶ 15–16.)  On July 8, 2015, defendants contracted with

16  plaintiff for "business consulting advice and services" related to the reopening of its casino ("the

17  Consulting Contract").  (*Id.*)  The Consulting Contract provided that the agreement would take

18  effect upon execution, and would be effective for a term of twenty-four months or until the

19  "facility becomes managed pursuant to a Management Agreement approved by the National

20  Indian Gaming Commission" ("NIGC").  (*Id.* at 7, ¶ 18.)  The contract also provided that

21  defendants "expressly, unequivocally and irrevocably waive their sovereign immunity" for "any

22  legal proceeding with respect to the Consulting Agreement, or any of the transactions

23  contemplated in the Consulting Agreement."  (*Id.* at 7, ¶ 19.)  The Tribal Council for the

24  Chukchansi Tribe approved the agreement by adopting Resolution No. 2015-31.  (*Id.* at 6, ¶ 15.)

25       On the same day the parties entered into the Consulting Contract, the parties also orally

26  agreed to enter into a Management Agreement, and defendants promised to promptly submit the

27  Management Agreement to the NIGC for approval.  (*Id.* at 7–8, ¶¶ 20–21.)

28  /////

2

1    On July 29, 2015, defendants entered into the Management Agreement with plaintiff,

2  which agreement the Chukchansi Tribal Council approved by adopting Resolution No. 2015-46.

3  (*Id.* at 8, ¶ 21.)  The contract stated that it had a term of five years, and would take effect five

4  days after the following conditions were met:  (i) the Chairman of the NIGC granted written

5  approval of the contract; (ii) the Chukchansi Tribe and NIGC concluded background

6  investigations of plaintiff; and (iii) plaintiff received all applicable licenses and permits for the

7  facility.  (*Id.* at 8, ¶¶ 22–23.)  Additionally, the contract provided that the Chukchansi Tribe

8  would waive sovereign immunity for any actions filed by plaintiff to enforce the terms of the

9  contract, and that the Chukchansi Tribal Council would enact a resolution adopting this waiver.

10  (*Id.* at 8, ¶ 24.)

11    From July to December 2015, plaintiff provided management and consulting services to

12  defendants.  (*Id.* at 9–10, ¶ 26.)  The Casino reopened on December 31, 2015.  (*Id.* at 10, ¶ 27.)

13  In April 2016, the parties agreed to amend the Management Agreement to adjust plaintiff's

14  compensation rate and to extend the term of the agreement from five to seven years.  (*Id.* at 11,

15  ¶ 29.)  Defendants also agreed to submit a revised version of the agreement to the NIGC for

16  approval.  (*Id.* at 11, ¶ 29.)  To date, defendants have failed to submit either the original

17  Management Agreement or the proposed amended agreement to the NIGC.  (*Id.* at 12, ¶ 30.)  As

18  a result of defendants' failure to submit either the agreement or the revised agreement to the

19  NIGC for approval, plaintiff has experienced financial loss.  (*Id.* at 12, ¶¶ 30–31.)

20    On May 10, 2017, defendants filed the instant motion to dismiss plaintiff's complaint in

21  its entirety based on this court's lack of subject matter jurisdiction.  (Doc. No. 8.)  Plaintiff filed

22  its opposition on June 6, 2017, together with a request for judicial notice.  (Doc. Nos. 12–13.)  On

23  June 13, 2017, defendants filed a reply.  (Doc. No. 14.)

24                                              **LEGAL STANDARD**

25    Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction

26  pursuant to Federal Rule of Civil Procedure Rule 12(b)(1).

27    Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

28  motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

1    claims alleged in the action.  *See* Fed. R. Civ. P. 12(b)(1); *see generally* Fed. R. Civ. P. 12(h)(3)

2    ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must

3    dismiss the action.").  Federal district courts generally have subject matter jurisdiction over civil

4    cases through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C.

5    § 1331.  *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1068 (9th Cir. 2005).  In a motion to dismiss

6    for lack of subject jurisdiction, a defendant may either attack the allegations of the complaint or

7    the existence of subject matter jurisdiction in fact.  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*

8    *Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

9           Here, defendants argue that the allegations of the complaint are insufficient to support

10   federal subject matter jurisdiction.  (Doc. No. 8.)  When a party brings a facial attack to subject

11   matter jurisdiction, that party contends that the allegations of jurisdiction contained in the

12   complaint are insufficient on their face to demonstrate the existence of jurisdiction.  *Safe Air for*

13   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a Rule 12(b)(1) motion of this type,

14   the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is

15   made.  *See Sea Vessel Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994); *Osborn v. United States*,

16   918 F.2d 724, 729 n.6 (8th Cir. 1990).  Accordingly, the factual allegations of the complaint are

17   presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element

18   necessary for subject matter jurisdiction.  *Savage v. Glendale Union High Sch. Dist.*, No. 205,

19   343 F.3d 1036, 1039 n.1 (9th Cir. 2003); *Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir.

20   2001).  Nonetheless, district courts "may review evidence beyond the complaint without

21   converting the motion to dismiss into a motion for summary judgment" when resolving a facial

22   attack.  *Safe Air for Everyone*, 373 F.3d at 1039.

23                                          **ANALYSIS**

24          As indicated, defendants move to dismiss plaintiff's complaint in its entirety, arguing that

25   this court lacks original jurisdiction over any of plaintiff's claims, and that there are no grounds

26   for the exercise of supplemental jurisdiction absent original jurisdiction.  (Doc. No. 8 at 11.)

27   Below, the court will address the parties' requests for judicial notice before analyzing defendants'

28   arguments in support of their motion to dismiss.

1    **A.     Requests for Judicial Notice**

2        In the motion to dismiss, defendants request that the court take judicial notice of the

3    following:  (i) the Chukchansi Tribe's Constitution (Doc. No. 9-1); (ii) Tribal Resolution No.

4    2001-11 creating the CEDA (Doc. No. 9-2); (iii) the Gaming Compact between the Chukchansi

5    tribe and the State of California, establishing requirements for tribal agreements with suppliers of

6    "Gaming Resources," and requiring any gaming resource suppliers to be licensed by the Tribal

7    Gaming Agency (Doc. No. 9-3); and (iv) the list of gaming suppliers authorized by the Tribal

8    Gaming Agency to contract with the tribe (Doc. No. 8 at 15 n.2).  In its opposition to the pending

9    motion to dismiss, plaintiff also requests that the court take judicial notice of a document

10   published by the NIGC, Regulation 533 Checklist for New Management Contracts.  (Doc. No. 13

11   at 2.)  Because the court need not and does not rely on any of these documents in resolving

12   defendants' motion to dismiss, the court declines to take judicial notice of them items at this time.

13   *See City of Royal Oak Retirement Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1050

14   (N.D. Cal. 2012); *see generally* Fed. R. Civ. P. 201.

15   **B.     Subject Matter Jurisdiction**

16       Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

17       As noted above, federal district courts generally have subject matter jurisdiction over civil

18   cases through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C.

19   § 1331.  *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1068 (9th Cir. 2005).  District courts have

20   "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

21   United States."  28 U.S.C. § 1331.  An action "arises under" federal law pursuant to § 1331 if the

22   cause of action (i) is created by federal law, or (ii) necessarily requires resolution of a substantial

23   question of federal law.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S.

24   308, 314 (2005); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699

25   (2006); *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004).

26       To determine whether a cause of action is created by federal law, courts typically apply

27   the "well-pleaded complaint" rule.  *Rainero v. Archon Corporation*, 844 F.3d 832, 836-37 (9th

28   Cir. 2016); *California v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000).  The "well-pleaded

5

1   complaint" rule establishes that federal jurisdiction exists only when a federal question is

2   presented on the face of the plaintiff's properly pleaded complaint.  *Id.*; *see also California ex.*

3   *Rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).  "A defense is not part of a

4   plaintiff's pleaded statement of his or her own claim."  *Dynegy, Inc.*, 375 F.3d at 838 (quoting

5   *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998)); *see also Provincial Gov't of Marinduque v.*

6   *Placer Dome, Inc.*, 582 F.3d 1083, 1091 (9th Cir. 2009).

7          The "well-pleaded complaint" rule is subject to several exceptions.  *See Hall v. N. Am.*

8   *Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007) (citing *Holman v. Laulo-Rowe Agency*, 994

9   F.2d 666, 668 (9th Cir. 1993).  One exception is the "artful pleading doctrine."  *See Smallwood v.*

10  *Allied Van Lines, Inc.*, 660 F.3d 1115, 1120 (9th Cir. 2011); *Hall*, 476 F.3d at 687.  Under the

11  "artful pleading" doctrine, "a well-pleaded state law claim nonetheless presents a federal question

12  when a federal statute has completely preempted that particular area of law." [1]  *Hall*, 476 F.3d at

13  687; *see also Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003);

14  *Losel Chase Bank USA, NA*, No. CIV–S–11–1999 KJM–DAD, 2012 WL 3778960, at *3 (E.D.

15  Cal. Aug. 31, 2012) (citing *Lippitt*, 340 F.3d at 1041).  The rationale for this doctrine is that "any

16  claim purportedly based on that preempted state law is considered, from its inception, a federal

17  claim, and therefore arises under federal law."  *Hall*, 476 F.3d at 687; *see also Balcorta v.*

18

_____

19  [1]  Complete preemption is distinguishable from ordinary defensive preemption.  *See Sullivan v.*
*American Airlines, Inc.*, 424 F.3d 267, 272–73 (2d Cir. 2005).  Where there is ordinary defensive
20  preemption, the substantive law to be applied in the action is federal law, and state law is
displaced.  *See id.* ("Ordinary defensive preemption comes in three familiar forms: express
21  preemption, conflict preemption, and field preemption.").  Where there is complete preemption,
an action commenced in state court may be removed on the basis of federal question jurisdiction,
22  and is considered to arise under federal law.  *See id.*  Complete preemption occurs when a federal
law both (i) conflicts with state law, and (ii) provides remedies that displace state law remedies.
23  *See Botsford v. Blue Cross and Blue Shield of Mont., Inc.*, 314 F.3d 390, 393 (9th Cir. 2002).
"Complete preemption is rare."  *ARCO Envt'l Remediation, L.L.C., v. Dep't of Health & Envt'l*
24  *Quality*, 213 F.3d 1108, 1115 (9th Cir. 2000).  The Supreme Court has identified only three
federal statutes that completely preempt well-pleaded state law claims:  Section 301 of the Labor
25  Management Relations Act of 1947, 29 U.S.C. § 185; Section 502(a) of the Employee Retirement
Income Security Act of 1974, 29 U.S.C. § 1132(a); and Sections 85 and 86 of the National Bank
26  Act of 1864, as amended, 12 U.S.C. §§ 85, 86.  *See Hall*, 476 F.3d at 687 n.3 (citing *Beneficial*
27  *Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)); *see also Coyle v. O'Rourke*, No. LA CV14–07121
28  JAK (FFMx), 2015 WL 58700, at *6 (C.D. Cal. Jan. 5, 2015).

1    *Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000).  Thus, "a plaintiff may

2    not defeat removal by omitting to plead necessary federal questions in a complaint."  *Lippitt*, 340

3    F.3d at 1041 (quoting *Franchise Tax Board of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S.

4    1, 22 (1983)).

5          As noted above, federal question jurisdiction may also exist if a claim necessarily requires

6    resolution of a substantial question of federal law.  *See Peabody Coal Co.*, 373 F.3d at 949.  A

7    state law claim implicates substantial questions of federal law if the federal issue is (i) necessarily

8    raised, (ii) actually disputed, (iii) substantial, and (iv) capable of resolution in a federal court

9    without disrupting the federal-state balance of power.  *See Gunn v. Minton*, 568 U.S. 251, 251

10   (2013); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674 (9th Cir. 2012).

11         In their motion to dismiss, defendants argue that the court lacks subject matter jurisdiction

12   because the parties are not diverse, and because the complaint does not present a federal question.

13   (Doc. No. 8 at 11–15.)  In its opposition, plaintiff argues that the complaint presents a federal

14   question because:  (i) plaintiff's claims are subject to complete preemption by the Indian Gaming

15   Regulatory Act, 25 U.S.C. § 2701 ("IGRA"), a federal law that regulates the operation of gaming

16   by Native American tribes; and (ii) plaintiff's claims necessarily require resolution of substantial

17   questions of federal law, since they hinge on whether failure to submit a Management Agreement

18   to the NIGC as required by the IGRA constitutes breach of contract and fraud.  (Doc. No. 12 at

19   7.)

20         The parties do not dispute that diversity jurisdiction is inapplicable.  (Doc. No. 12 at 17,

21   n.4.)  The court will therefore focus its analysis on whether the plaintiff's claims arise under

22   federal law pursuant to 28 U.S.C. § 1331.

23         Plaintiff does not assert any federal causes of action in its FAC but rather alleges only

24   claims under California state law.  (Doc. No. 1.)  As such, the FAC is only subject to federal court

25   jurisdiction if it presents state law claims subject to complete preemption, or if resolution of the

26   state law claims implicates a substantial question of federal law.  *See Hall*, 476 F.3d at 687.

27         Contrary to plaintiff's contentions, there is little guidance from the Ninth Circuit as to

28   whether the doctrine of complete preemption applies to the IGRA.  *See Runyan v. River Rock*

                                                   7

1    *Entm't Auth.*, No. C 08-1924 VRW, 2008 WL 3382783, at *4 (N.D. Cal. Aug. 8, 2008) ("[T]he

2    Ninth Circuit has not held that the IGRA completely preempts state law and it is not clear that the

3    Ninth Circuit would do so.").  While the Ninth Circuit has considered the doctrine of ordinary

4    defensive preemption under the IGRA, it has not directly addressed whether the statute has

5    complete preemptive effect over state law claims.  *See, e.g.*, *Confederated Tribes of Siletz Indians*

6    *of Or. v. Oregon*, 143 F.3d 481, 486 n.7 (9th Cir. 1998); *Cabazon Band of Mission Indians v.*

7    *Wilson*, 37 F.3d 430 (9th Cir. 1994).[2]

8        The Eighth Circuit and a number of district courts have found that the IGRA completely

9    preempts state law claims, but only in certain circumstances.  *See Gaming Corp. of Am. v. Dorsey*

10   *& Whittney*, 88 F.3d 536, 543 (8th Cir. 1996) ("The term 'complete preemption' is somewhat

11   misleading because even when it applies, all claims are not necessarily covered."); *see also*

12   *Missouri ex rel Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1105 (8th Cir. 1999).  Specifically,

13   these courts have found that complete preemption applies in this context only if state law claims

14   interfere with processes mandated and regulated by the IGRA—i.e., tribal governance of gaming

15   on Native lands, or tribal decisions as to which gaming activities are allowed on Native territories.

16   *See Missouri ex rel Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1105 (8th Cir. 1999)

17   (explaining that state law claims are only preempted if they interfere with processes mandated

18   and regulated by the IGRA); *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 & 549

19

20   [2] Some district courts in this circuit have suggested that Ninth Circuit precedent implicitly rejects
     the applicability of complete preemption to the IGRA.  *See Runyan*, 2008 WL 3382783, at *4
21   ("[The Ninth Circuit has] analyzed the question whether IGRA preempts state taxation of offtrack
     betting on Indian reservations by balancing federal, tribal and state interests. . . . [but] such
22   balancing would not have been necessary if the court had concluded that IGRA completely
     preempted state law"); *see also Keim v. Harrah's Operating Co.*, No. 09cv1732 BTM (AJB),
23   2010 WL 28536, at *1–2 (S.D. Cal. Jan. 5, 2010); *Kersten v. Harrah's Casino-Valley Ctr.*, No.
24   07cv0103 BTM(JMA), 2007 WL 951342, at *2 (S.D. Cal. Feb. 27, 2007).  These courts have
     relied on Ninth Circuit decisions addressing ordinary defensive preemption.  However, because
25   the doctrines of complete preemption and ordinary preemption are distinct, the Ninth Circuit's
     past analysis of ordinary preemption under the IGRA does not provide clear guidance on the issue
26   of complete preemption.  *See Sullivan*, 424 F.3d at 274 (warning against conflation of these two
     doctrines); *see generally* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
27   Federal Practice & Procedure: Jurisdiction § 3722.1 (3d ed. 1998) (describing the difference
28   between complete and ordinary preemption as "a difference in kind").

8

1   (8th Cir. 1996) (stating that complete preemption is limited to "[a]ny claim which would directly

2   affect or interfere with a tribe's ability to conduct its own [gaming] licensing process"); *Alabama*

3   *v. PCI Gaming Auth.*, 15 F. Supp. 3d 1161, 1171 (N.D. Ala. 2014) ("IGRA completely preempts

4   the state law claim in Count One if that claim interferes with the Poarch Band's governance of

5   gaming on Indian lands."); *First Am. Casino Corp. v. E. Pequot Nation*, 175 F. Supp. 2d 205, 209

6   (D. Conn. 2000); *see generally County of Madera v. Picayune Rancheria of the Chukchansi*

7   *Indians*, 467 F. Supp. 2d 993, 1001–1002 (E.D. Cal. 2006) ("'[G]aming activity' would seem to

8   be the actual playing or provision of the games identified [in the IGRA] and/or the necessary

9   conduct associated with playing or providing the identified games.").[3]

10      Here, even assuming that the doctrine of complete preemption applies to the IGRA,

11   plaintiff has not met its burden to show that its claims fall within the statute's preemptive scope.

12   In its complaint, plaintiff alleges state law claims based on breach of contract, fraud, violation of

13   the California Business and Professions Code § 17200, and tortious interference with prospective

14   economic advantage.  (Doc. No. 1.)  The basis of plaintiff's state law claims is that defendants

15   failed to submit a casino management contract to the NIGC for approval despite having agreed to

16   do so.  (Doc. No. 1 at 12, ¶ 30.)  Plaintiff asserts that resolution of these claims involves fact-

17

18   [3] District courts in the Ninth Circuit have looked to Eighth Circuit decisions when considering
     challenges to subject matter jurisdiction based on complete preemption under the IGRA.  *See,*
19   *e.g.*, *Runyan v. River Rock Entm't Auth.*, No. C 08-1924 VRW, 2008 WL 3382783, at *4 (N.D.
     Cal. Aug. 8, 2008).  These district courts have declined to directly address the nature of the
20   IGRA's preemptive force, and have found that even if the IGRA has complete preemptive effect
     over certain state law claims, the claims at issue would not fall within the scope of that doctrine.
21   *See Runyan*, 2008 WL 3382783, at *4; *see also Keim*, 2010 WL 28536, at *1–2; *Kersten*, 2007
     WL 951342, at *2; *County of Madera*, 467 F. Supp. 2d at 1001–1002.  In contrast, a number of
22   decisions from California courts have concluded that the IGRA completely preempts state law
     claims based on Eighth Circuit precedent.  *See Hotel Emps. and Rests. Emps. Intern. Union v.*
23   *Davis*, 21 Cal. 4th 585, 621 (1999) ("[T]he Legislature would not otherwise have the power to
     authorize or prohibit lotteries or gambling casinos because federal law completely preempts the
24   field of Indian gambling."); *Am. Vantage Cos. v. Table Mountain Rancheria*, 103 Cal. App. 4th
     590, 596 (2002); *Great Western Casinos, Inc. v. Morongo Band of Mission Indians*, 74 Cal. App.
25   4th 1407, 1426 (1999).  These state court decisions, however, do not control here because federal
     law as determined by federal courts governs questions of federal preemption.  *See Mackey v.*
26   *Lanier Collection Agency*, 486 U.S. 825, 830–31 (1988); *see also Board of Trustees of Cement*
27   *Masons & Plasterers Health & Welfare Trust v. GBC Northwest, LLC*, No. C06-1715 C, 2007
     WL 1521220, at *2 (W.D. Wash. May 22, 2007).
28

1   intensive inquiries into the formation and construction of the Management Agreement, which will

2   necessarily involve analysis of the federal IGRA.  (Doc. No. 12 at 7.)  However, based on the

3   allegations of the complaint, it does not appear that plaintiff's claims "interfere[] with or [are]

4   incompatible with IGRA."  *Manoukian v. Harrah's Entm't, Inc.*, No. 11cv503–L(JMA), 2011

5   WL 1343009, at *2 (S.D. Cal. Apr. 7, 2011).  Plaintiff does not articulate how its claims would

6   affect the tribe's ability to govern gaming on Native territory, or interfere with its decisions about

7   which gaming activities to permit in the Casino.  *See County of Madera*, 467 F. Supp. 2d at 1002–

8   1002.  Unlike those cases where courts have found state law claims completely preempted by the

9   IGRA, plaintiff's claims in this action do not challenge the validity of a contract under the IGRA

10  or the scope of tribal authority to conduct gaming on Native territory. [4]  *See, e.g.*, *Gaming Corp.*

11  *of Am.*, 88 F.3d at 549–50 ("[C]laims based on [a private law firm's] duty to the nation during the

12  [casino management] licensing process would appear to fall within the scope of IGRA's complete

13  preemption doctrine"); *Alabama v. PCI Gaming Auth.*, 15 F. Supp. 3d 1161, 1171 (N.D. Ala.

14  2014) (finding complete preemption of plaintiff's state law nuisance claims seeking to enjoin

15  allegedly illegal gaming on Native American lands).

16       Accordingly, to the extent that the doctrine of complete preemption applies to the IGRA,

17  plaintiff's claims do not fall within the statute's preemptive scope.  *Kersten*, 2007 WL 951342, at

18  *2; *see also Seely v. Harrah's Rincon Casino*, No. 11 CV 0594 MMA (MDD), 2011 WL

19  2601019, at *2 (S.D. Cal. June 30, 2011) (finding that plaintiff's state law claims for property

20  damage and loss of use were not completely preempted by the IGRA because they did not

---

[4] To the extent that the defendant Tribe disputes the validity of the management contract absent NIGC approval, this is a defense to plaintiff's claims, which cannot form the basis for subject matter jurisdiction.  *See Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 207 F.3d 488, 489 (8th Cir. 2000) ("IMCI's anticipatory contention that the Tribe may invoke the provisions of IGRA as a defense is insufficient to confer federal question jurisdiction on this court."); *see also Rumsey Indian Rancheria of Wintun Indians of Cal. v. Dickstein*, No. 2:07-cv-02412-GEB-EFB, 2008 WL 648451, at *4–6 (E.D. Cal. Mar. 5, 2008) (rejecting plaintiff's arguments that the IGRA completely preempted plaintiff's claims for breach of fiduciary duties, breach of contract, and violation of § 17200, because "[t]his argument concerns fact-bound questions regarding the nature of the agreements at issue . . . but it does not establish that these determinations interfere with the Tribe's ability to govern gaming."); *see generally K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir. 2011) ("Federal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated").

10

1    interfere with the tribe's governance of gaming activities); *Keim*, 2010 WL 28536, at *2–3;

2    (explaining that even if complete preemption applied to the IGRA, plaintiff's tort claims were not

3    subject to complete preemption because they did not "potentially infringe on [the] tribe's

4    governance of gaming"); *Runyan*, 2008 WL 3382783, at *4 ("[I]t is far from clear that the state

5    law at issue here—generally applicable employment and contract claims—fall within the scope of

6    the complete preemption doctrine."); *County of Madera*, 467 F. Supp. 2d at 1001–1002 (holding

7    that even if the Ninth Circuit agreed with the Eighth Circuit's IGRA complete preemption

8    analysis, the County's nuisance abatement claim against the Tribe was not completely preempted

9    because it did not interfere with the Tribe's governance of gaming activities or interfere with the

10   Tribe's decisions as to which gaming activities are allowed); *NGV Gaming, Ltd. v. Upstream*

11   *Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (rejecting defendant's argument

12   that the IGRA completely preempted plaintiff's claim for tortious interference with contract

13   because "Plaintiff could prove [the claim] without implicating the decision-making process of the

14   tribe").

15        Having concluded that the FAC does not allege causes of action created by federal law,

16   the court next considers whether plaintiff's claims implicate "a substantial question of federal

17   law" sufficient to trigger subject matter jurisdiction under 28 U.S.C. § 1331.

18        To determine whether a state law claim raises a substantial federal question, courts must

19   "examine the particular facts of the claim asserted." *Peabody Coal Co.*, 373 F.3d at 949; *see also*

20   *Arizona Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1129–30 (9th Cir. 1995) (finding a federal

21   question was presented because the case involved a determination of whether a federal tribe

22   exceeded its authority by regulating the employment policies of a commercial entity doing

23   business on tribal lands).  The Ninth Circuit has found that state law claims related to contracts

24   with Native American tribes raise substantial federal questions when they involve the following

25   issues:  the scope of a tribal government's authority, the applicability of tribal law to non-Native

26   entities, or the validity of federally-regulated contracts. *See Peabody Coal Co.*, 373 F.3d at 949

27   ("In cases from other jurisdictions involving contracts between Native sovereigns and non-

28   Natives, the federal question in each case was either a tribal government's authority to apply

11

1   tribal law to the commercial activities of non-Indian companies, or the validity of mineral leases

2   themselves."); *see also Comstock Oil & Gas, Inc. v. Ala. & Coushatta Indian Tribes of Tex.*, 261

3   F.3d 567, 569 (5th Cir. 2001) (identifying a federal question for subject matter jurisdiction

4   purposes when a tribe sought to have mineral lease agreement with an oil company declared void

5   in its tribal court); *Superior Oil Co. v. United States*, 798 F.2d 1324, 1328–29 (10th Cir. 1986)

6   (identifying a federal question under 28 U.S.C. § 1331 because plaintiff's claims required

7   resolution of the question of whether the Navajo tribe exceeded its authority under the IMLA by

8   withholding approval of oil and gas lease assignments).  However, a state law claim does not

9   raise a substantial federal question simply because it involves a contract that is subject to federal

10  regulation and approval.  *See Peabody Coal Co.*, 373 F.3d at 949; *see also Harris v. San Manuel*

11  *Band of Mission Indians*, EDCV 14-02365 SJO (DTBx), 2015 WL 12791503, at *2 (C.D. Cal.

12  Apr. 29, 2015) (discussing an employment contract not governed by the IGRA).  Thus, state law

13  claims that simply "center[] upon the contract and its construction rather than the [federal]

14  statutory basis for the contract" do not present federal questions.  *Littell v. Nakai*, 344 F.2d 486,

15  487–88 (9th Cir. 1965).

16      As noted above, plaintiff here seeks to vindicate rights it claims exist under California

17  contract and tort law.  Plaintiff's claims are not based on a dispute concerning the validity of the

18  Management Agreement.  *See Littell*, 344 F.2d at 487–88; *see also Niagara Mohawk Power*

19  *Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752–53 (2d Cir. 1996) ("What

20  remains of the plaintiff's complaint without the issue of the franchise agreement's validity . . . is a

21  cause of action sounding in contract that arises solely under state law"); *Harris*, 2015 WL

22  12791503, at *2 (finding that plaintiff's claims implicated federal questions when a contested

23  issue asserted in the complaint was whether the document was a management contract governed

24  by the IGRA).  Moreover, plaintiff's complaint does not allege an existing dispute about asserted

25  tribal court jurisdiction or authority.  *See Peabody Coal Co.*, 323 F.3d at 949–50; *Jefferson State*

26  *Bank v. White Mountain Apache Tribe*, No. CV 11–8100–PCT–PGR, 2011 WL 5833831, at *2–3

27  (D. Ariz. Nov. 21, 2011); *cf. Comstock Oil & Gas, Inc.*, 261 F.3d at 569; *Superior Oil Co.*, 798

28  F.2d at 1328–29.

1    The court therefore concludes that the addressing of plaintiff's claims does not require

2    resolution of a substantial question of federal law, and that the court therefore lacks original

3    jurisdiction over any claims asserted in plaintiff's complaint.  Absent original jurisdiction over

4    any claim, the court cannot assert supplemental jurisdiction over plaintiff's state law causes of

5    action.  *See* 28 U.S.C. § 1367(a).  Accordingly, defendants' motion to dismiss will be granted.[5]

6                                   **CONCLUSION**

7    For the reasons stated above:

8    1.  Defendants' motion to dismiss (Doc. No. 8) is granted;

9    2.  This action is dismissed;

10   3.  All previously scheduled dates in this action are vacated; and

11   4.  The Clerk of the Court is directed to close this case.

12   IT IS SO ORDERED.

13   Dated:  **July 27, 2017**                     _____

14                                   UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25   [5] In their motion to dismiss, defendants argue that even if federal question jurisdiction exists, the
26   complaint should be dismissed on tribal sovereign immunity grounds.  (Doc. No. 8 at 17.)
     Plaintiffs contend in their opposition that defendants waived sovereign immunity in the
27   Management Agreement.  (Doc. No. 12 at 7.)  Having found that subject matter jurisdiction is
     lacking, the court need not address the issue of sovereign immunity and whether defendants
28   properly waived immunity in the Management Agreement.

13